(108 So. 359)

JACKSON, Superintendent of Banks, v. ARITON BANKING CO. et al. (4 Div. 254.)

(Supreme Court of Alabama. April 29, 1926.)

1. Banks and banking ⊜⇒47(3)—Where capital stock of two merging banks was converted into stock of consolidated bank, unpaid stock of one original bank held not collectable for benefit of creditors of consolidated bank (Code 1923, §§ 7038, 7040–7042).

Where capital stock of two merging banks was converted into stock of consolidated bank, 40 per cent. unpaid stock of one original bank, which did not enter into appraisement of its assets on consolidation, cannot be collected for benefit of creditors of consolidated bank in absence of fraud, in view of Code 1923, §§ 7038, 7040–7042, though it could be collected for creditors of original bank.

2. Banks and banking ⊜⇒67.

Where capital stock of two merging banks was converted into stock of consolidated bank,

merging banks thereby became one corporation as provided by Code 1923, § 7038.

**3. Corporations ⬦⬦228—Unpaid subscriptions to capital stock of corporations constitute trust fund for benefit of corporate creditors (Code 1923, § 7062).**

Unpaid subscriptions to capital stock of corporations constitute trust fund for benefit of corporate creditors, especially in case of insolvency, as provided by Code 1923, § 7062.

**4. Banks and banking ⬦⬦47(3)—When two banks are consolidated and their stock converted into stock of new bank, stockholders' rights and liabilities are determined by relation to new corporation.**

When two banks are consolidated and their stock converted into stock of new bank, rights and liabilities of stockholders, except as limited and controlled by statute, are determined by their relation to new corporation.

**5. Appeal and error ⬦⬦737.**

Assignment of error complaining of court's action in sustaining demurrer need not, under Supreme Court rule 1, assign as separate error court's ruling on different grounds of the demurrer.

Appeal from Circuit Court, Dale County; J. S. Williams, Judge.

Bill in equity by A. E. Jackson, as Superintendent of Banks, against the Ariton Banking Company and others. From a decree sustaining demurrer to the bill, complainant appeals. Affirmed.

Steiner, Crum & Weil, of Montgomery, and Sollie & Sollie, of Ozark, for appellant.

Code 1907, §§ 3504, 3505, and 3506, were general, and applied to all corporations, including banks, and governed the stockholders, officers, and creditors of the merging banks. S. & N. A. R. Co. v. Gray, 160 Ala. 497, 49 So. 347; Pearce v. Brilliant Coal Co., 200 Ala. 630, 77 So. 4. Complainant has the right, in equity, to enforce payment of the balance due on stock in the People's Bank. Porter v. Hughes, 198 Ala. 36, 73 So. 400; Riles v. Coston, 208 Ala. 508, 95 So. 43; Roman v. Dimmick, 123 Ala. 366, 26 So. 214; Belleview C. Co. v. Faulks, 198 Ala. 579, 73 So. 927; Code 1907, § 3505; B. R., L. & P. Co. v. Cunningham, 141 Ala. 470, 37 So. 689; Austin v. Duffer (Tex. Civ. App.) 279 S. W. 318.

C. O. Stokes, of Ozark, and M. I. Jackson and Peach & Norton, all of Clayton, for appellee.

Unpaid subscriptions constituted a trust fund only for the benefit of the creditors of the old People's Bank. Code 1907, §§ 3502–3506; Acts 1911, p. 31, § 23; Acts 1915, p. 95, § 12; Chamberlain v. Bromberg, 83 Ala. 581, 3 So. 434. The agreement of consolidation amounted to a dissolution of the two old corporations and a release of unpaid subscriptions to the People's Bank, which latter continued in existence only for the protection of its creditors, and not the creditors of the consolidated corporation.

SAYRE, J. In 1916 the Ariton Banking Company and the People's Bank of Ariton were incorporated banking concerns doing business in the town of Ariton. Each of them was capitalized at $25,000, their capital stock consisting of 250 shares of the par value of $100 each. The Ariton Banking Company stock had been paid for in full; of the People's Bank stock 40 per centum remained unpaid. In October of the year mentioned these two banks were consolidated, or, to use the language of the bill, the People's Bank was merged into the Ariton Banking Company. For the purpose of the consolidation or merger the assets of the Ariton Bank were appraised at $35,000; the assets of the People's Bank at $17,500; "but said unpaid 40 per centum of said capital stock of said People's Bank of Ariton did not enter into the appraisement of its assets." The stock of the consolidated bank was placed at 390 shares of the par value of $100 each, of which 260 were issued to the shareholders of the Ariton Bank, 130 to the shareholders of the People's Bank, in lieu of and in full payment for their interests in the older corporations. Complainant (appellant) filed the bill in this cause July 16, 1925, seeking to collect 40 per centum of the subscriptions to the stock of the People's Bank for the benefit of creditors of the consolidated bank, now insolvent and in process of liquidation by complainant according to the statute in such cases made and provided. It is to be inferred that the debts, for the satisfaction of which this collection is sought, were contracted by the Ariton Bank subsequent to the consolidation. The stockholders of the People's Bank are made parties defendant. In the circuit court, in equity, their demurrer to the bill was sustained.

[1, 2] We understand, from the averments of the bill that the capital stock of the merging or consolidating corporations was converted into the stock of the consolidated corporation, and thereby the merging or consolidating corporations became one corporation as provided by section 3503 of the Code of 1907, which, as amended by the act of September 30, 1919 (Laws 1919, p. 1108), became section 7038 of the Code of 1923.

Sections 3504, 3505, and 3506 of the Code of 1907 (sections 7040, 7041, and 7042 of the Code of 1923), provided as follows:

"3504. *Powers, Duties and Liabilities of.*— Consolidated or merger corporations shall possess all the rights, powers, and privileges, and be subject to all the restrictions, disabilities, and duties of each of the consolidating corporations, unless additional powers not inconsistent with the provisions of this chapter, are ex-

⬦⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pressed in the said agreement and acts of consolidation, and unless the powers possessed by the several merging corporations are limited or restricted in said agreement.

"3505. *Rights, Privileges, Powers, Franchises, and Property Vested in Consolidated or Merger Corporations.*—Upon the consummation of such merger or consolidation, all and singular, the rights, privileges, powers, franchises, and all property, real, personal, or mixed, and all debts due on any account, as well as for stock subscriptions, and all other things in action belonging to each of the said several corporations, shall be vested in the consolidated corporation; and all property, rights, privileges, powers, and franchises and all and every other interest shall thereafter be as effectually the property of the consolidated corporation, as they were of the respective former corporations, and the title to any real estate by deed or otherwise under the laws of this state, vested in any of such respective former corporations shall vest in the new corporation, and shall not in any way be impaired by reason of such consolidation.

"3506. *Rights of Creditors and Liens Preserved.*—Rights of creditors and all liens upon the property of any of the said former corporations shall be preserved unimpaired, and the former corporations may be deemed to continue in existence in order to preserve the same; and all debts, liabilities, and duties of each of the said former corporations shall thenceforth attach to the consolidated corporation, and may be enforced against it to the same extent as if said debts, duties, and liabilities had been incurred or contracted by it."

In the original act, from which these sections of the Code were taken, sections 3505 and 3506 were written continuously as one section, and complainant refers to that circumstance as having significance in the pending cause. We shall keep this fact in mind.

[3] The bill avers in effect that the constituent corporations (so for convenience to speak of the original banks) surrendered their stock, and in lieu thereof stock in the consolidated corporation, paid in full, was issued to stockholders in the constituent corporations in proportion to their interest in the assets taken over by the consolidated corporation. Section 3506 secured and conserved the rights of creditors of the constituent corporations. But, as we have noted, complainant does not represent creditors of that class. Unpaid subscriptions to the capital stock of corporations constitute a trust fund for the benefit of corporate creditors. Adams v. Perryman, 202 Ala. 469, 80 So. 853; Perrine Sawmill v. Powell, 207 Ala. 447, 93 So. 33. And in the case of insolvency this doctrine is established by statute in this state as to property in general of insolvent corporations. Code 1923, § 7062. But this does not mean that unpaid subscriptions to the stock of a constituent corporation remain a trust fund for the satisfaction of the subsequently contracted debts of the consolidated corporation, unless, indeed, the agreement of consolidation provides, expressly or by im-

plication, that the balances due on subscriptions due to the old shall pass over to the new or consolidated corporation. In the case made by the present bill there is no such provision. There was an effort made in the articles of agreement for consolidation to make provision concerning the continued liability of the stockholders of the People's Bank. The averment as to that is that the articles of agreement provided for "the acquittance, relinquishment and waiver in favor of said holders of the capital stock of said People's Bank of Ariton of the unpaid balance of 40 per cent. thereon," but that this provision was disapproved by the superintendent of banks, and for that reason was omitted from the agreement. But not much importance is to be attached to that circumstance. The statute settled and determined the rights and liabilities of the stockholders of the People's Bank in their new relation as stockholders of the consolidated bank. As to the debts of the People's Bank they could not escape liability to the extent of the balances due on their subscriptions to the stock of that bank, and if their new stock represented nothing more than the true value of the assets contributed to the consolidated bank by the People's Bank—and this is not denied in the bill—they cannot be held answerable to subsequent creditors of the consolidated bank as for unpaid balances on their subscriptions to the constituent bank.

Complainant's brief likens the transaction in question to the sale by a stockholder of shares partly paid to a prospective stockholder in the same corporation. But in that case the question arises whether a stockholder may shift his liability for the unpaid balance of his stock subscription to his assignee, and the conditions upon which that may be done are stated in the decisions of this court. Allen v. Montgomery, 11 Ala. 437; Henderson v. Mayfield, 153 Ala. 625, 45 So. 211. Here a wholly different question is presented. And here, in our judgment, the only question of interest to creditors of the consolidated bank, as against the individual stockholders, is whether that corporation got full value for its stock issued as fully paid.

[4] Section 3505 of the Code of 1907, supra, provided that upon the consummation of the merger or consolidation of two corporations "all and singular, the rights, privileges, powers, franchises, and all property, real, personal, or mixed, and all debts due on any account, as well as for stock subscriptions * * * shall be vested in the consolidated corporation," and upon this provision of the statute is hung the argument for liability in this cause; but this provision we think, contemplates the case in which the shares of the new corporation are issued for shares of the old, share for share, and must be construed in connection with those provisions of the cognate section 3506, by which the rights of

the creditors of the constituent corporations are conserved and made enforceable against the consolidated corporation to the same extent as if incurred or contracted by it. The consolidated corporation comes into existence as a new corporation, the constituent corporations being dissolved, and the rights and liabilities of the new stockholders, except as limited and controlled by the statute, are determined by their relation to the new corporation. This, we think, is the effect of our statute, and this is the effect attributed to like statutes in other jurisdictions. 5 Cook on Corps. (8th Ed.) § 897.

As related to the People's Bank, the operation of consolidation amounted to a reduction of its capital stock. In strict reason and in practical effect the reduction preceded the consolidation. Such reductions are authorized by the Code, section 7003, and the provision is that:

"No such decrease of capital stock shall release or otherwise affect the liability of any stockholders whose shares shall not have been fully paid, for debts of the corporation theretofore contracted."

And the courts hold that:

"If the original subscriptions were not paid in full, corporate creditors who were such before the reduction may disregard the reduction and enforce payment of their debts from such original unpaid subscriptions, as though no reduction had taken place. * * * But the creditors whose debts were contracted subsequently to the reduction can look only to the capital stock as reduced for security. They will be held to have given credit upon the faith of that amount of stock alone." 1 Cook on Corps. (8th Ed.) § 289; Cooper v. Frederick, 9 Ala. 742.

The result, in complete consonance with justice and equity, is that the only right or interest of the creditors of the new corporation whose claims accrued after consolidation, as against the individual stockholders of the People's Bank, is that the new stock shall have been honestly paid for in full. The averments of the bill disclose a case in which the consolidated corporation received full value for the stock issued to the stockholders of the People's Bank. Nor is there averment that the transaction thus shown was in any wise affected by fraud or bad faith. We find in the bill, therefore, no sufficient reason for calling the individual defendants to account for their original subscriptions to the stock of the People's Bank, and this disposes of the bill.

We note appellant's citation of Austin State Banking Commissioner v. Duffer (Tex. Civ. App.) 279 S. W. 318. The case has had careful consideration, but nothing has been found in it to sustain appellant's contention. The case involved very different considerations.

[5] In the brief for appellant it is stated, as the effect of some of our decisions, that, "if a demurrer with several separate grounds is interposed and sustained, an assignment of error merely challenging the ruling sustaining the demurrer, with no separate assignments challenging the ruling as to the separate grounds of demurrer, is too general, does not comply with said rule 1 [Supreme Court Rule 1], and cannot be considered," and for that reason appellant, out of abundance of caution, bases a separate assignment of error on each separate ground of the demurrer filed in the trial court. The cases cited do not sustain the practice. The cases have been misconceived. In Alabama Chemical Co. v. Hall, 212 Ala. 8, 101 So. 456, cited to this proposition, there was a joint assignment of error. The case illustrates the rule that on a joint assignment of error there can be no reversal on matters available to some of the appellants only. In Craig v. Pierson Lumber Co., 169 Ala. 548, 53 So. 803, another cited case, there were several amended replications, and the assignment of error was that the court erred in "overruling defendant's demurrer to amended replication" without further specification. The assignment was held to be too general. Related rulings are shown in Hall v. Pearce, 209 Ala. 399, 96 So. 608. The memorandum decision in Williams v. Coosa Manufacturing Co., 138 Ala. 673, 33 So. 1015, does not fully disclose the rulings assigned for error. The rule in cases like the present is correctly shown in the cases cited to National Park Bank v. L. & N. R. R. Co., 199 Ala. 192, 74 So. 69; Birmingham Railway v. Barranco, 203 Ala. 639, 84 So. 839; Patten v. Swope, 204 Ala. 171, 85 So. 513; Hughes v. Bickley, 205 Ala. 619, 89 So. 33, and other cases that might be mentioned.

The trial court correctly held that there was no equity in appellant's bill. Other questions argued in appellant's brief need not be discussed.

The decree is affirmed.

ANDERSON, C. J., and GARDNER, and MILLER, JJ., concur.